

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JARETH RICHEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:20-cv-00764-LSC** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.   INTRODUCTION

The plaintiff, Jareth Richey ("Richey"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Richey timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

On May 5, 2005, the Commissioner determined Richey was disabled and entitled to begin receiving SSI as a child. (Tr. at 59.) Upon attainment of age 18, the Commissioner had to redetermine Plaintiff's eligibility status as an adult. (Tr. at 24.) The Commissioner found Plaintiff was no longer disabled as of August 1, 2016, and Plaintiff's eligibility was terminated on August 24, 2016. (Tr. at 24.)   On

reconsideration, a disability hearing officer also found that Plaintiff was no longer disabled as of August 1, 2016. (Tr. at 24, 158-73.) Plaintiff appealed, and after a hearing, an Administrative Law Judge ("ALJ") issued a decision on May 19, 2019, finding Plaintiff was no longer disabled as of August 1, 2016, and he had not become disabled since that date. (Tr. at 42.) The Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.)

Plaintiff was 21 years old at the time of the ALJ's decision. (*See* Tr. at 120.) He has a high school education obtained through a combination of homeschool and public school special education classes. (Tr. at 59.) Plaintiff has no past relevant work experience. (Tr. at 59, 79.) Plaintiff claims he is disabled due to his Asperger's, Epilepsy, ADHD, migraines, and mass near his spine. (Tr. at 348.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual age 18 or older is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step. However, this step is not used for redetermining disability at age 18. *See* 20 C.F.R. § 416.987(b).

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments ("MDI"). *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* An impairment or combination of impairments is "not severe" if it does significantly limit an individual's ability to perform basic work activities. *See* 20 C.F.R. § 416.922. The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of the impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e).

The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *Id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience to determine whether the plaintiff can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that, based on a redetermination of disability under the rules for adults who file new applications, Plaintiff's "disability ended on August 1, 2016, and [he] has not become disabled again since that date." (Tr. at 42.) Regarding step one of the sequential evaluation process—whether Richey was engaged in substantial gainful activity—the ALJ correctly explained that "this step is not used for redetermining disability at age 18" and therefore proceeded to step two. (Tr. at 25.) *See* 20 C.F.R. § 416.987(b). Then, the ALJ determined that, since August 1, 2016, Plaintiff's "autism, Asperger's, absence seizures, and anxiety" are "severe" based on the requirements set forth in the regulations. (Tr at 26.) *See* 20 C.F.R. § 416.927(c). However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 26-29.) *See* 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. The ALJ determined that as of August 1, 2016, Plaintiff has the following RFC:

> [T]o perform a full range of work at all exertional levels but with the following non-exertional limits: The claimant can perform simple routine and repetitive tasks with occasional interaction with the people and coworkers. He must avoid concentrated exposure to hazards, including machinery and unprotected heights.

(Tr. at 29.)

According to the ALJ, Plaintiff has no past relevant work. (Tr. at 40.) The ALJ also determined that Plaintiff is a "younger individual age 18-49" at 21 years old, has

a high school education, and is able to speak in English, as those terms are defined by the regulations. (*Id.*) In addition, the ALJ determined that the "[t]ransferability of job skills is not an issue here because the claimant does not have past relevant work." (*Id.*) Because Plaintiff does not have past relevant work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocational Rules as a guidelines. (Tr. at 41.) The VE found that there are a significant number of jobs in the national economy that Plaintiff can perform, such as a handpackager, order puller, or janitorial worker. (*Id.*) The ALJ concluded his findings by stating that Plaintiff's "disability ended on August 1, 2016, and the claimant has not become disabled again since that date." (Tr. at 41.) (*See* 20 C.F.R. 416.987(e), 416.920(g).)

## II.   STANDARD OF REVIEW

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported

by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520. 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal.

*Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III.   DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed and remanded for three reasons. First, Plaintiff argues that the ALJ failed to accord proper weight to the treating physicians, Dr. Sarah Boxley, Dr. Theodros Mengesha, and Dr. Scott Argo, and failed to show good cause for doing so. Second, Plaintiff contends that the ALJ failed to give meaningful consideration to Plaintiff's mother. Third, Plaintiff argues that the ALJ's decision was not based on substantial evidence because "the hypothetical question relied upon did not accurately state the Claimant's effects of autism or residual functional capacity."

### A. Proper Weight to Treating Physicians

Although Plaintiff fails to elaborate on how the ALJ failed to accord proper weight to Plaintiff's treating physicians, Plaintiff, nevertheless, alleges the ALJ failed to accord proper weight to Plaintiff's treating physicians: Dr. Sarah Boxley, Dr. Theodros Mengesha, and Dr. Scott Argo. The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments

depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 416.927(d), 404.1527(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a **treating source**, or a primary physician, which is defined in the regulations as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) **a non-treating source**, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) **a non-examining source**, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources.  *See* 20 C.F.R. §

404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also* 20 C.F.R. § 416.927(c)(2); *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Additionally, this court generally gives "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Moreover, this court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *See Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015). In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary

conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Opinions such as whether a plaintiff is disabled, the plaintiff's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

### 1. *Dr. Sarah Boxley, MD*

The ALJ gave appropriate weight to Dr. Sarah Boxley, and substantial evidence supports the ALJ's decision. The ALJ had good cause not to give Boxely's statements controlling weight because Dr. Boxely's opinion was not bolstered by the evidence, the evidence supported a contrary finding, and Dr. Boxely's opinion was conclusory or inconsistent with her medical records.

On February 27, 2019, in Dr. Boxely's most recent single page Mental Health Source Statement, Dr. Boxely concluded: (1) Richey can remember or carry out very short and simple instructions; (2) Richey cannot maintain attention, concentration and/or pace for periods of at least two hours; (3) Richey cannot perform activities within a schedule and be punctual within customary tolerances; (4) Richey cannot sustain an ordinary routine without special supervision; (5) Richey cannot adjust to routine and infrequent work changes; (6) Richey cannot interact with supervisors and/or co-workers; (7) Richey cannot maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (8) Richey would be off-task 30% of the time in addition to normal workday breaks in an eight-hour day. (Tr. at 1094.) This assessment is inconsistent with and unsupported by Dr. Boxely's records on Plaintiff's condition, as well as the records from other treating physicians.

On June 1, 2016, Plaintiff saw Dr. Sarah Boxley, a psychiatrist with Mountain Lakes Behavioral Health, where Plaintiff was noted to be doing "very well." (Tr. at 30, 746.) Dr. Boxley indicated that he "denies mood swings, depression, [and] anxiety" and that "he is able to focus with medication." (Tr. at 746.) Dr. Boxley completed a mental status exam which revealed that "motor activity was normal, his speech was normal, his mood was euthymic, his affect was normal, he had poor

judgment and insight, but his thought process and content were normal." (Tr. at 30, 746.)

On July 27, 2016, Dr. Boxley updated Plaintiff's diagnosis and stated that Plaintiff is presenting Asperger's syndrome, ADHD, Bipolar Disorder, and Anxiety. (Tr. at 990.) In a follow-up appointment on October 19, 2016, Plaintiff was "doing good with his medications which are helping his mood swings, depression, anxiety, focus, and sleep." (Tr. at 31, 994.) Dr. Boxley also conducted a mental status update where motor activity was normal, his speech was normal, his mood was euthymic, his affect was normal, he had poor judgment and insight, but his thought process and content were normal. (Tr. at 31, 994.) On April 19, 2017, "the claimant reported that he was able to focus with his medication" and he had not been depressed or angry. (Tr. at 31, 1046.) Plaintiff denied any psychosis and stated that he was eating and sleeping well. (Tr. at 31, 1046). Plaintiff also reported that he spent his time playing video games, watching television, and movies. (Tr. at 31, 1046.) A report of his mental status stated that his motor activity was normal, his speech was normal, his mood was euthymic, his affect was normal, but he had poor judgment and insight. (Tr. at 31, 1046.) On September 27, 2017, Plaintiff reported that his medications were working for his moods, attention, focus, and sleep. (Tr. at 31, 1047.) On November 16, 2017, after an increase in medicine, his mother said, "his moods have

improved a lot and he is no longer having depression." (Tr. at 31, 1048.) Dr. Boxley also noted that Plaintiff had good focus, good energy level, and he has been helping his grandparents around the house." (Tr. at 1048.)

On February 14, 2018, Dr. Boxley indicated that Plaintiff's medications had been working for his moods, depression, sleep, focus, and attention. (Tr. at 31, 1049.) Plaintiff expressed that his moods had been "50 50" which he explained as "good and bad," but he did not think it was necessary to change any medication. (Tr. at 1049.) On May 9, 2018, Plaintiff's medications were helping with his moods, focus, and hyperactivity, and Plaintiff denied any side effects of medicines. (Tr. at 31, 1050.) Treatment notes state that "Dr. Boxley felt the claimant needed more activities to do at home and outside of the home, as he played many video games." (Tr. at 31, 1050.) A mental status examination also revealed that his motor activity was normal, speech was normal, affect was normal, he had poor judgment and insight, but his thought process and content were normal. (Tr. at 31, 1050.)

On July 12, 2018, and September 6, 2018, Plaintiff was reportedly doing well with his moods and focus. (Tr. at 31, 1051, 1052.) Dr. Boxley also reported that the medications are helping his moods, depression, irritability, and ADHD. (Tr. at 1051.) On November 11, 2018, Plaintiff reported that his medications are working, and his moods are good. (Tr. at 31, 1090.) Plaintiff also reported that he could focus about

"50/50" depending on his interest level. (Tr. at 31, 1090.) He also reported that he looks forward to getting a new video game. (Tr. at 31, 1090.) A mental status examination revealed that his motor activity was normal, his speech was normal, his mood was euthymic, his affect was normal, he had poor judgment and insight, but his thought process and content were normal. (Tr. at 31, 1090.) On January 2, 2019, Plaintiff reported that "his attention and concentration were adequate, his mood was stable, his anxiety was manageable, and he has no mood or behavioral issues." (Tr. at 31, 1091.)

The above records are in direct contradiction to Dr. Boxley's Mental Health Source Statement. (Tr. 1094.) Dr. Boxley treated Plaintiff for over two years and reported that the only abnormal findings from the mental status evaluations were "poor judgment and insight," while Plaintiff consistently had an appropriate appearance, normal affect, euthymic mood, logical thought process, normal speech, and normal thought content. (Tr. at 39, 1090.) On February 27, 2019, Dr. Boxley confirmed the RFC of simple, routine, and repetitive tasks when answering the question "[c]an Mr. Richey understand, remember, or carry out very short and simple instructions" with a "yes". (Tr. at 39, 1094.) However, the ALJ is correct in noting that the remainder of the answers provided in the Mental Health Source

Statement are based on unsupported assessments and deviate from contemporaneous charted assessments. (Tr. at 39, 1094.)

For example, Dr. Boxley answered "no" when asked if "Richey [can] maintain attention, concentration[,] and/or pace for periods of at least two hours?" (Tr. at 1094.) However, on September 6, 2018, Dr. Boxley reported that his focus is "okay" with his medication, his thought process was logical, and his thought content was within normal limits. (Tr. at 40, 1052.) Also, Dr. Boxley failed to support the answer of "no" when asked "[c]an Mr. Richey interact with supervisors and/or co-workers" because there is no mention of this evaluation in the medical records. (Tr. at 40, 1094.) Additionally, Dr. Boxley reported that Richey cannot maintain socially appropriate behavior and adhere to the basic standard of neatness and cleanliness. This is contradicted by Dr. Boxley's report on May 9, 2018, when she stated, "I do think that he needs more activities to do at home and outside of the home." (Tr. at 40, 1050.)

Furthermore, on May 9, 2018, Dr. Boxley stated Plaintiff "needed disability due to his Autism and inability to socialize and function in a work environment," but this is a legal conclusion of little probative value because it is a decision reserved for the Commissioner. (Tr. at 36.) *See* SSR 96-5p. Therefore Dr. Boxley's opinion on whether Plaintiff needs disability is not entitled to controlling weight.

Moreover, the ALJ recognizes that Plaintiff's ability to go to church, interact with family, and play video games regularly "demonstrates an ability to follow directions and complete tasks" and is inconsistent with Dr. Boxley's medical records. (Tr. at 36.) As a result, there is good cause to not give Dr. Boxley's opinion controlling weight.

Based on this evidence, the ALJ could properly find that Dr. Boxley's assessment of Plaintiff's limitations is inconsistent with her medical records and unsupported by medical evidence. As a result, the ALJ did not err in the weight given to Dr. Boxley's opinion.

### 2. *Dr. Theodros Mengesha, MD*

The ALJ gave appropriate weight to Dr. Theodros Mengesha, and substantial evidence supports the ALJ's decision. On April 12, 2016, Plaintiff was seen by Dr. Theodros Mengesha, M.D., a neurologist with HH Neurological Associates, for an evaluation of absence seizures. (Tr. at 31.)

On March 21, 2018, Dr. Mengesha provided the opinion that Plaintiff: (1) has an average of two seizures per month; (2) experiences postictal symptoms for one day after each seizure; (3) is likely to miss three days per month due to seizures; and (4) needs unscheduled breaks during an eight-hour working day every one to three days. (Tr. at 1016-17.) The ALJ gave Dr. Mengesha's opinions "little weight"

because "his opinion is simply not consistent with his records" or Plaintiff's daily activities. (Tr. at 35.) The Court agrees with the ALJ. Dr. Mengesha's assessment is inconsistent with and unsupported by his records on Plaintiff's condition, as well as the records from other treating physicians.

Dr. Mengesha reported that Plaintiff complained of seizures, tremors, and frequent headaches. (Tr. at 721.) The seizures involve staring out the window for two to three minutes followed by a migraine. (Tr. at 721.) A prior EEG showed no abnormalities. (Tr. at 31, 981, 982.) Dr. Mengesha is also following the mass Plaintiff reported on his back and noted that Plaintiff "complains of back pain, joint pain, muscle cramps, stiffness, leg pain at night and leg pain with exertion." (Tr. at 721.) Upon exam, Plaintiff was alert, attentive, fully oriented, not distressed, and his abstract thinking and memory were intact. (Tr. at 31, 722.) Dr. Mengesha also noted that Plaintiff's cranial nerves were intact, he had normal muscle tone and strength, his sensation and reflexes were normal, his coordination was normal, and his gait was normal. (Tr. at 31, 722, 723.) Dr. Mengesha increased Plaintiff's medication to decrease seizures. (Tr. at 31, 723.) On June 13, 2016, Dr. Mengesha reported that Plaintiff's seizures had improved because of the new medication. (Tr. at 32, 921.) On August 25, 2016, Dr. Mengesha noted that Plaintiff's seizures had further improved. (Tr. at 32, 911.)

Plaintiff followed up with Dr. Mengesha on February 24, 2017, and he complained of "2 headaches a month and mom states that usually triggers a seizure." (Tr. at 32, 1066.) Dr. Mengesha noted that Plaintiff's seizures had improved, and he had a normal physical exam. (Tr. at 32, 1066-67.) Dr. Mengesha also stated that Plaintiff is independent with ambulation. (Tr. at 32, 1068.) On September 18, 2017, Plaintiff reported that he recently had a seizure and has seizures approximately once a month. (Tr. at 32, 1070.) Dr. Mengesha indicated that Plaintiff's seizures had improved again. (Tr. at 1073.)

On March 6, 2018, during a follow-up appointment with Dr. Mengesha, Plaintiff reported that he had two episodes of staring spells over the last six months. (Tr. at 32, 1039.)  Plaintiff's mother also reported that Plaintiff has had some anxiety and depression, but it had gotten better. (Tr. at 32, 1040.) On exam, Dr. Mengesha noted that Plaintiff was "in no acute distress, he was alert and fully oriented with normal speech, normal comprehension, normal repetition and naming and normal memory, his cranial nerves were intact, he had full muscle strength and tone in his extremities, his reflexes were symmetrical, his sensations were intact, his coordination was normal in his activities of daily living and ambulation with no limitation in mobility." (Tr. at 32, 1042.)

On March 9, 2018, an EEG of Plaintiff was normal with no evidence of epilepsy, seizure tendency, or encephalopathy. (Tr. at 32, 1042.) On May 7, 2018, Plaintiff reported staring episodes which usually occurred during stress and anxiety. (Tr. at 32, 1032.) Plaintiff denied depression, anxiety, memory loss, pain, muscle weakness, fatigue, or malaise. (Tr. at 32, 1034.) Dr. Mengesha also stated Plaintiff's seizures as "improved" and that Plaintiff's physical exam was normal. (Tr. at 32, 1035.) Dr. Mengesha advised Plaintiff to avoid video games and strobe lights as much as possible and recommended he "undertake relaxation methods to improve anxiety level." (Tr. at 32, 1035.) On November 6, 2018, Plaintiff reported having two or three seizures within the last two months where the most recent seizure was two weeks ago. (Tr. at 33, 1083.)

Dr. Mengesha's opinions that Plaintiff's seizures cause Plaintiff to need unscheduled breaks every one to three days and he would miss three days of work per month are contradicted by his records. (Tr. at 35, 1016.) On August 24, 2018, Dr. Mengesha stated that Plaintiff has not had seizures in the "last several months." (Tr. at 1039.) Further, Dr. Mengesha stated that Plaintiff only had two "starring off spells" in the last six months. This is in direct contradiction to Dr. Mengesha's report that Plaintiff will have an average of two seizures per month. (Tr. at 1016.) As

such, the ALJ did not err in stating that the medical records do not support the severity of the symptoms alleged by Plaintiff. (Tr. at 33.)

Dr. Mengesha's opinion is also contradicted by the record. Dr. Mengesha advised Plaintiff to avoid playing video games as much as possible. (Tr. at 1035.) Nevertheless, the record shows Plaintiff repeatedly reported playing video games and Dr. Boxely noted he plays "many video games." (Tr. at 386, 1046, 1050, 1090.) Although Plaintiff continued to play video games, his seizures continued to improve. As such, the ALJ rightly found Dr. Mengesha's opinion on Plaintiff inconsistent with Plaintiff's ability to play video games.

Therefore, the ALJ did not err in affording little weight to Dr. Mengesha's opinion. Even though he is a treating physician, the inconsistencies between the medical records and the documented limitations are substantial evidence for the ALJ to discount Dr. Mengesha's opinion.

### 3.   *Dr. Scott Argo*

The ALJ provided proper reasons, supported by substantial evidence, for the weight given to Dr. Scott Argo's opinion. Dr. Argo is a family practitioner. On April 5, 2019, Dr. Argo provided two single-page documents regarding Plaintiff's physical and mental capacities. For his physical capacities, Dr. Argo indicated that Plaintiff: (1) can sit upright in a standard chair for less than thirty minutes at one time; (2) can

stand for less than fifteen minutes at one time; (3) will be lying down, sleeping, or sitting with legs propped up at waist level or above for four hours in an eight-hour daytime period; (4) will be off-task one hundred percent of the time in an eight hour day; and (5) would miss thirty days in a thirty-day period due to his physical symptoms. (Tr. at 1093.) For his mental capabilities, Dr. Argo indicated that Plaintiff: (1) cannot remember or carry out very short and simple instructions; (2) cannot maintain attention, concentration and/or pace for periods of at least two hours; (3) cannot perform activities within a schedule and be punctual within customary tolerances; (4) cannot sustain an ordinary routine without special supervision; (5) cannot adjust to routine and infrequent work changes; (6) cannot interact with supervisors and/or co-workers; (7) cannot maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (8) would be off-task one hundred percent of the time in addition to normal workday breaks in an eight-hour day; and (9) would fail to report to work for thirty days in a thirty-day period due to his physiological symptoms. (Tr. at 1093.) Dr. Argo did not elaborate on his conclusions on either form. The ALJ found that Dr. Argo's opinions are "not entitled to controlling weight as such extreme limitations are not supported by the record. (Tr. at 36.) The Court agrees and finds Dr. Argo's assessment

inconsistent with and unsupported by Dr. Argo's records on Plaintiff's condition and the records from other treating physicians.

On February 2, 2016, Dr. Scott Argo, a family medicine doctor with DeKalb Family Medicine, saw Plaintiff in his office for the chief concern of seizures. (Tr. at 945.) Dr. Argo noted that the seizures were "intermittent," and they caused Plaintiff to have "trouble concentrating, decreased responsiveness, and seizure activity." (Tr. at 946.) However, Dr. Argo referred Plaintiff to a neurologist to treat the seizures. (Tr. at 946.) As such, February 2, 2016, was Plaintiff's last appointment with Dr. Argo. (Tr. at 1018-21.) According to the record, Plaintiff's only other appointment at Dekalb Family Medicine, where Dr. Argo worked, was on December 15, 2017, when Plaintiff met with Dr. Jason Ham for the flu. (Tr. at 1018.)

Although the ALJ did not discuss the time between Dr. Argo's last visit with Plaintiff and his opinions, the length of time between the two supports the ALJ's decision to afford Dr. Argo's opinion "little weight." (Tr. at 36-37.)   When determining what weight to give treating physicians, "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." C.F.R. § 416.927(c)(2)(i). Dr. Argo last saw Plaintiff on February 2, 2016. Dr. Argo filled out the Physical Capacities Form and Mental Health Source Statement on April 5, 2019. More than

three years had passed between the time Dr. Argo last saw Plaintiff and when Dr. Argo rendered his opinion of Plaintiff. (Tr. 1018-21, 1091-92.) As such, there is no evidence showing Dr. Argo knew how Plaintiff's impairments improved or worsened since February 2, 2016, when he filled out the forms three years later. At a minimum, the gap in time is evidence to show why the ALJ found large inconsistencies between Dr. Argo's opinions and other treating physicians' medical records. Nonetheless, the lapse in time supports the ALJ's decision to give Dr. Argo's opinions less weight.

Dr. Argo also failed to explain the basis for the extreme limitations he identified. "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion." C.F.R. § 416.927(c)(3). Here, Dr. Argo did not indicate why he chose the limitations that apply to Plaintiff. Instead, he circled answers and wrote numbers where asked. (Tr. at 1092-93.) The only explanation given by Dr. Argo is on the Physical Capacities Form. Where the form asked what conditions cause Plaintiff's limitations, Dr. Argo wrote, "ADHD, migraines, Asperger's, [and] epilepsy." (Tr. at 1092.) Dr. Argo provided no evidence, laboratory findings, or medical signs that support his conclusions about Plaintiff's physical or mental capabilities. As such, this supports the ALJ's decision to give Dr. Argo's opinion little weight.

Dr. Argo's conclusions on Plaintiff's physical capabilities contradict his own accounts and the record in this case. On February 2, 2016, Dr. Argo reported that Plaintiff was not in distress, well-nourished, his lungs sounded normal, had "grossly normal movement of all extremities," had full range of motion of the spine, and had "no pain elicited by motion, and his heart sounds normal." (Tr. at 37, 946.) This contradicts his opinion that Plaintiff cannot stand for more than fifteen minutes or sit upright in a chair for less than thirty minutes. (Tr. at 1092.)

Further, the record as a whole conflicts with Dr. Argo's opinion in the Physical Capabilities Form. As discussed above, Dr. Mengesha reported that Plaintiff's seizures improved and that his medication was working. (Tr. at 1039.) Plaintiff testified that he can pick up a 20-pound bag of dog food. (Tr. at 64.) On January 1, 2019, Dr. Boxley's office reported that Plaintiff's motor activity was within normal limits. (Tr. at 1091.) On February 20, 2019, when looking at Plaintiff's physical capabilities, Dr. Mengesha reported "[m]otor examination 5/5 strength in all four extremities with normal muscle bulk and tone," and that Plaintiff's gait was normal to tandem. (Tr. at 1086.)

Dr. Argo's opinions on Plaintiff's mental capacities also conflict with the record in this case. Dr. Argo, a family doctor, reported that plaintiff would miss thirty days in a thirty-day period because of his psychological symptoms. (Tr. at 1093.) Yet,

Dr. Boxley, Plaintiff's treating psychologist, stated that she does not know how many days Plaintiff would miss due to his psychological symptoms. (Tr. at 1094.) Further, Dr. Argo reasoned that Plaintiff cannot understand, remember, or carry out very short and simple instructions. (Tr. at 1093) Yet, Dr. Boxley reported that Plaintiff is capable of understanding, remembering, or carrying out very short and simple instructions. (Tr. at 1094.) Dr. Boxley also reported that Plaintiff's moods had been stable. (Tr. at 1091.)

Further, no other physician indicated that Plaintiff would be off-task one hundred perfect of the time, would miss thirty days of work within thirty days, or need to lie down four out of eight hours in the workday. Dr. Boxley reported that she would expect Mr. Richey to be off-task only thirty percent of an 8-hour day. (Doc. 1094.) Dr. Mengesha reported that Plaintiff had "normal speech, comprehension, repetition, and naming" and that "recent and remote memory were normal." (Tr. at 1086.)

Dr. Argo's opinion that Plaintiff cannot complete one workday out of thirty is inconsistent with Plaintiff's reports of playing video games for most of the day. The Court agrees with the ALJ that Plaintiff's ability to play video games "demonstrates an ability to follow directions, handle change, and adapt to different stressors." (Tr. at 36.) Dr. Argo's opinion is also inconsistent with Plaintiff testifying that he can

dress himself if his mom reminds him to do it. (Tr. at 65.) Further, Plaintiff can care for his dog, sweep the floor, empty the dryer, and take out the trash. (Tr. at 361-62, 366.) Plaintiff is also capable of attending church. (Tr. at 63.) This is in contradiction to Dr. Argo's opinions on Plaintiff's mental capabilities.  (*See* Tr. at 1093.) Therefore, there is substantial evidence for the ALJ to afford Dr. Argo's opinion less weight.

The ALJ was correct in assigning the respective weights to each of the treating physicians' opinions. Even though all three of these doctors are treating physicians, the contradictions between the medical records and the reported limitations allow the ALJ to properly afford little weight to their opinions. Accordingly, the ALJ did not err in assigning partial weight to the opinions of Dr. Boxley, Dr. Mengesha, and Dr. Argo.

### B. Failure to Give Meaningful Consideration to the Testimony of Plaintiff's Mother

The ALJ did not fail to give meaningful consideration to Lillian Ritchey's testimony. The ALJ opinion states that he took into consideration Ms. Ritchey's Third Party Function Report, statements, and testimony and gave the evidence "some weight." (Tr. at 38.)

Plaintiff's mother is not an "acceptable medical source" under 20 CFR § 416.927(a). [O]pinions from individuals who are not acceptable medical sources are

not entitled to deference or special consideration. *Everett v. Soc. Sec. Admin., Comm'r*, 777 F. App'x 422, 425 (11th Cir. 2019); *see also Miles v. Soc. Sec. Admin., Comm'r*, 469 F.App'x 743, 745 (11th Cir. 2012) (stating "ALJ has no duty to give significant or controlling weight" to opinions from non-medical sources.). As such, Ms. Richey is not entitled to any deference or special consideration. However, all testimony must be reviewed and the "ALJ should state the weight he accords" and "the reasons for his decision to accept or reject that evidence." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) (citing *Gibson v. Heckler*, 779 F.2d 619 (11th Cir. 1986). As such, the Court looks to the Social Security Administration's Policy Interpretation Ruling SSR 06-03p for guidance on how an ALJ should consider Ms. Richey's opinions and testimony.

When considering evidence from a parent, it is appropriate "to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, *Evidence from "Non-medical Sources"*. The ALJ then "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when

such opinions may have an effect on the outcome of the case." *Id.* at *Explanation of the Consideration Given to Opinions from "Other Sources"*.

Here, the ALJ properly considered the statements from Plaintiff's mother. The ALJ explained that he gave Ms. Richey's opinions and testimony "some weight." And to support doing so, the ALJ followed the SSA guidelines discussed above. The ALJ considered the nature and extent of the relationship between Plaintiff and Ms. Richey. (Tr. at 38.) The ALJ recognized Ms. Richey as Plaintiff's mother and took into consideration that Ms. Richey's opinion "may be influenced by loyalties of the family." (Tr. at 38.) The ALJ also looked at whether the evidence Ms. Richey provided was consistent with other evidence. (Tr. at 38.) The ALJ stated that Ms. Richey's opinions and observations "certainly [do] not outweigh the accumulated medical evidence regarding the extent to which the [Plaintiff's] limitations can reasonably be considered severe." (Tr. at 38.) In addition, the ALJ stated it found the opinions "not fully persuasive" for the same reasons it found Plaintiff's "allegations to be less than wholly supportable." (Tr. at 38.) As such, the ALJ did not err when he gave Ms. Richey's testimony "some weight." (Tr. at 38.)

### C. Lack of Substantial Evidence

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to give proper weight to the treating physicians;

(2) ALJ failed to give meaningful consideration to the testimony of Ms. Richey, and (3) the hypothetical question posed to the VE did not accurately reflect all Plaintiff's limitations based on his "limitations and impairments." (Doc. 11 at 28 & Doc. 14 at 10.) Plaintiff's first two arguments in support of a lack of substantial evidence are repetitive and have already been covered above. As such, here the court will only consider the hypothetical question posed to the VE.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). The ALJ's hypothetical, however, need not reference symptoms that the claimant "alleged to suffer but were either not supported by her medical records or were alleviated by medication." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007). Put simply, the ALJ is not required to pose hypotheticals to the VE that include limitations unsupported by the evidence. *See Crawford*, 363 F.3d at 1161.

Here, the ALJ posed the following hypothetical questions to the VE:

ALJ: Okay, Now, Mr. McKinney, I would ask you to assume a hypothetical individual of the claimant's age, education and work experience, or more precisely, no past relevant work, with no exertional limitations, but can only have occasional interaction with the public and coworkers. And is limited to simple, routine, and repetitive tasks. And must avoid concentrated exposure

hazards, including machinery and unprotected heights. Would such a hypothetical individual be able to perform any jobs in the national economy?

VE: Yes, there would be a wide range of unskilled jobs. Examples include . . . a hand packager, an order puller[,] [and] . . . [a] janitorial worker . . . .

ALJ: Thank you. Hypothetical number two, assume a hypothetical individual of the claimant's age, education and no past relevant work, limited to the full range of light, and simple, routine, and repetitive tasks. But must avoid concentrated exposure to hazards, machinery, and unprotected heights. Would such a hypothetical individual be able to perform any jobs in the national economy?

VE: Yes, sir. Examples of light, unskilled jobs . . . would include that as a garment sorter, . . . an inspector, [and] a hand packager . . . .

(Tr. at 79-81.) The hypothetical questions posed by the ALJ comprehensively cover all of Plaintiff's impairments. *Pendley*, 767 F.2d at 1563. As discussed above, the ALJ determined in Plaintiff's RFC that he can "perform a full range of work at all exertional levels." (Tr. at 29.) Therefore, the first hypothetical question posed by the ALJ comprehensively and adequately describes Plaintiff's impairments that are supported by the record and Plaintiff's RFC. Additionally, even if the evidence suggests that the exertional limit should be light, the second hypothetical question suggests that Plaintiff can work as a garment sorter, inspector, or hand packager. (Tr. at 79-81.) Because the hypothetical questions included all the limitations in the RFC, Plaintiff's argument fails. Plaintiff's argument is a restatement of his previous two arguments regarding how the ALJ weighed the testimony of Plaintiff's treating

physicians and mother. As such, for the reasons stated in the prior two sections, the RFC covered all Plaintiff's impairments and the VE's answers satisfy the substantial evidence standard. *See* Ybarra v. Comm'r of Soc. Sec. 658 F. App'x. 538, 542-43 (11th Cir. 2016) (finding the VE's statements substantial evidence because the plaintiff did not dispute that the hypothetical considered all the limitations found in the RFC and the plaintiff's criticisms of the hypothetical question are identical to those leveled at the ALJ's RFC).

Thus, all of Plaintiff's limitations were comprehensively covered by the ALJ's hypothetical questions. Accordingly, the ALJ did not err.

## IV. CONCLUSION

Upon review of the administrative record, and considering all of Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. The motions to remand are due to be denied. A separate order will be entered.

**DONE** and **ORDERED** on March 29, 2022.

L. Scott Coogler
United States District Judge

206888